1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
2  STEPHEN E. ABRAHAM, SB# 172054
   E-Mail: Stephen.Abraham@lewisbrisbois.com
3  650 Town Center Drive, Suite 1400
   Costa Mesa, CA 92626
4  Telephone: 714.668.5562
   Facsimile: 714.850.1030

5  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
6  MELISSA T. DAUGHERTY, SB# 227451
   E-Mail: Melissa.Daugherty@lewisbrisbois.com
7  633 West 5th Street, Suite 4000
   Los Angeles, California 90071
8  Telephone: 213.250.1800
   Facsimile: 213.250.7900

9  Attorneys for Defendant Tribecca, Inc.

10
11              UNITED STATES DISTRICT COURT
12              CENTRAL DISTRICT OF CALIFORNIA
13

14 Andres Gomez,                          CASE NO. 2:20-CV-06894-DSF-AFM

15         Plaintiff,                      **DEFENDANT'S OPPOSITION TO
                                           PLAINTIFF'S MOTION FOR
16    vs.                                  SUMMARY JUDGMENT**

17 Tribecca, Inc., a California Corporation; Date: September 13, 2021
   and Does 1-1                            Time: 1:30 p.m.
18                                         Dept.: 7
          Defendants.
19                                         Hon. Dale S. Fischer

20

21       Defendant Tribecca, Inc. ("**Defendant**") herewith submits its Opposition to

22 Plaintiff's Motion for Summary Judgment.

23 / / /

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEWIS**
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ..............................................................1

II.     RELEVANT FACTS.......................................................................................2

        1.      Plaintiff is Sort-Of, Maybe, or Not at All Disabled............................2

                A.      Plaintiff Inconsistently Describes His Visual
                        Limitations ................................................................................2

                B.      Plaintiff Has Refused to Produce Evidence of His
                        Disability...................................................................................2

                C.      Plaintiff Admits He Can View Elements of the
                        Websites....................................................................................2

        2.      Plaintiff is a Resident of Florida Except (Apparently)
                When it is Convenient to Be From Somewhere Else ...........................2

        3.      Plaintiff Claimed to Have Encountered Defendant's
                Website Only From His Residence in Florida .....................................3

        4.      Plaintiff Claimed to Want to Rent a Car for His
                Girlfriend to Drive During His Frequent Travels
                Between Florida and California But Produced No
                Evidence of Travel, Rentals, or a Girlfriend.......................................4

        5.      Plaintiff Claimed of Wanting to Rent a Vehicle from
                Defendant Makes no Sense Given the Distances .................................5

III.    LEGAL STANDARD.......................................................................................6

        1.      Standard for Summary Judgment .........................................................6

        2.      Standards for Accessibility Claims .....................................................7

        3.      The Requirement of Standing in "Website" Cases...............................7

                A.      The Plaintiff Must Suffer Discriminatory Conduct...................7

                B.      The Plaintiff Must Demonstrate a *Bona Fide* Intent to
                        Patronize Defendant's Business ...............................................7

IV.     DISCUSSION....................................................................................................8

        1.      There are Serious, Substantial, Material, and Genuine
                Disputes as to Essential Elements of Plaintiff's Claims

i

Foundational Not Only to His Motion But to His
Standing to Sue ....................................................................... 8

    A.   There is a Genuine Material Dispute as to Whether
Plaintiff is Disabled in Light of Plaintiff's Failure to
Offer *Any* Evidence of His Disability Beyond His
Self-Serving Declaration. ............................................. 8

    B.   Even if Plaintiff Were Disabled, He Has Not
Described How the Conditions of the Property
Affected His Ability to Patronize the Website ........................ 12

    C.   There is No Evidence Plaintiff Has Ever Rented a
Vehicle Let Alone One from Defendant and None of a
Bona Fide Intent to Patronize .................................... 13

  2.   Plaintiff's State Law Unruh Act Claim Fails Because
Plaintiff's Alleged Web Surfing Occurred in Florida ........................ 15

**V.**    **CONCLUSION** ..............................................................**16**

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................. 6

*Brooke v. Hotel Inv. Grp., Inc.*,
   No. 2:17-CV-2527-HRH, 2017 U.S. Dist. LEXIS
   150717, 2017 WL 4124042 (D. Ariz. Sept. 18,
   2017) .................................................................................. 15

*Brooke v. RIHH LP*,
   2020 U.S. Dist. LEXIS 27266 (N.D. Cal. Feb. 18,
   2020) .................................................................................. 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................. 6

*Chaplin v. Greyhound Lines, Inc.*,
   1995 U.S. Dist. LEXIS 9478, 1995 WL 419741
   (N.D. Cal. July 3, 1995) ..................................................... 16

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
   631 F.3d 939 (9th Cir. 2011) ........................................... 7, 12

*EEOC v. AutoZone, Inc.*,
   630 F.3d 635 (7th Cir. 2010) ............................................. 11

*Feezor v. Sears, Roebuck & Co.*,
   608 Fed. App'x. 476 (9th Cir. 2015) ................................. 13

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ............................................... 6

*Loving v. Princess Cruise Lines, Ltd.*,
   Case No. 08-2898, 2009 U.S. Dist. LEXIS 130477,
   2008 WL 7236419 (C.D. Cal. 2009) ................................. 15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................... 13

*Marinelli v. City of Erie*,
   216 F.3d 354 (3d Cir. 2000) .............................................. 11

*Rocca v. Den 109 LP*,
   684 Fed. App'x. 667 (9th Cir. 2017) ................................. 13

*Strojnik v. Orangewood LLC*,
   Case No. 19-cv-00946-DSF, 2019 U.S. Dist.
   LEXIS 213103 (Aug. 8, 2019) ...................................... 15, 16

*Tesone v. Empire Mktg. Strategies*,
   942 F.3d 979 (10th Cir. 2019) ...................................... 10, 11

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

iii

### OTHER FEDERAL AUTHORITIES

FED.R.CIV.PROC. 56.....................................................................................6

### FEDERAL TREATISES

11 MOORE'S FEDERAL PRACTICE § 56.13[1] (2006 ed.)..........................6

### STATE CASES

*Angelucci v. Century Supper Club*,
    41 Cal.4th 160 (2007)..........................................................................7

*Archibald v. Cinerama Hawaiian Hotels, Inc.*,
    73 Cal.App.3d 152 (1977)..................................................................15

*Osborne v. Yasmeh*,
    1 Cal.App.5th 1118 (2016)..................................................................7

*White v. Square, Inc.*,
    7 Cal.5th 1019 (2019)......................................................................7, 8

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I.

## INTRODUCTION AND SUMMARY

This case involves claims under the Americans with Disabilities Act ("ADA") and related state law; but it is not one of the thousands of architectural barrier cases Plaintiff's attorneys have brought on behalf of Plaintiff and other similarly represented plaintiffs. This is a _website_ lawsuit. And that is supposed to means something different. In Plaintiff's mind, it is sufficient to have clicked a mouse or touched a computer key to open this Court's doors … and a defendant's pocketbook.

But federal principles related to the invoking of this Court's jurisdiction and its extraordinary powers to grant relief still apply as do the requirement that Plaintiff demonstrate the existence of a condition creating injury for which he is entitled to relief. If any of the essential elements are missing – if they are not proven by the party bearing the burden of proof at trial – then Plaintiff's motion for summary judgment must be denied.

As set forth in Plaintiff's own moving papers as supplemented by his discovery responses, Plaintiff's evidence supporting his claim demonstrates not just that he cannot obtain relief but that his story is deceptive if not deliberately false.

Plaintiff claims to be "legally blind" but admits he can read text and discern shapes and colors on a computer screen.

Plaintiff claims he visited Defendant's website wanting to rent a car but offered no evidence of ever actually patronizing _any_ car rental business, whether Defendant's or the other car rental businesses he also sued. In fact, he offers no evidence of having ever traveled outside of Florida.

Plaintiff claims to reside part-time in California, but his sworn discovery responses speak only of his Florida residence from where he allegedly accessed Defendant's website, a fact fatal to his Unruh Act claim.

Plaintiff's papers not only miss but do not come close to hitting the mark.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LEWIS
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

## II.

## RELEVANT FACTS

1. **PLAINTIFF IS SORT-OF, MAYBE, OR NOT AT ALL DISABLED**

### A.    Plaintiff Inconsistently Describes His Visual Limitations

Plaintiff claims to be legally blind. However, his admissions in his declaration say otherwise. Beyond his statements in his declaration, Plaintiff Andres Gomez has offered no evidence of his alleged disability. **DF 44** Plaintiff claims to have blind spots in visual field and flashes and blurred vision.  **DF 45**

### B.    Plaintiff Has Refused to Produce Evidence of His Disability

Plaintiff has never identified any treating or diagnosing eye specialist but instead only identified by last name his primary care physician with no other identifying information. **DF 46** Plaintiff has refused to produce evidence of diagnosis or treatment of his alleged disability, claiming the "request is an invasion of his privacy protected by the California State Constitution and related privacy laws." **DF 47** While referring to a Florida-issued disabled person placard, Plaintiff has never produced any such placard nor identified any placard issued in California.  **DF 48** Plaintiff has never supplemented his discovery responses nor produced documents evidencing his alleged disability. **DF 49**

### C.    Plaintiff Admits He Can View Elements of the Websites

Plaintiff admits he "is able to see some of the text on a webpage if he Is able to enlarge the font to a big enough size." **DF 50** Plaintiff admits he can notice (discern) colors. **DF 51** Computers have built-in functionality that allow for increasing size of fonts without use of special equipment. **DF 52**

2. **PLAINTIFF IS A RESIDENT OF FLORIDA EXCEPT (APPARENTLY) WHEN IT IS CONVENIENT TO BE FROM SOMEWHERE ELSE**

In his declaration, Plaintiff claims to live part-time in El Monte, California. That is the first time he has ever mentioned his situationally-convenient part-time lodging. Curiously, he forgot about where he supposedly lives half of the year

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   when responding to discovery.

2      In response to written discovery, Plaintiff identified only residences in which

3   he lived for the five years leading to his discovery responses in Florida but none in

4   California:

5         • 1251 Northwest 20th St. Miami Florida 33142 (2015-2016)

6         • Plaintiff has lived in Miami in 2017, however he cannot recall the ad-

7           dress

8         • 2600 Southwest 27th Ave. Miami Florida 33133 (2018-2020)

9         • 3737 Peacock Ave. Miami Florida 33146. 2020 (Current Address)

10   **DF 53** Plaintiff has never supplemented his discovery responses nor produced doc-

11   uments evidencing his residence and never offered any evidence of living any-

12   where other than Florida.[1] **DF 54**

13   **3.   PLAINTIFF CLAIMED TO HAVE ENCOUNTERED DEFENDANT'S WEBSITE**

14        **ONLY FROM HIS RESIDENCE IN FLORIDA**

15      Plaintiff attempted to access Defendant's website "on July 1, 2020 from his

16   home, 3737 Peacock Ave. Miami Florida 33146." **DF 55** As of January 8, 2021,

17   the computing devices alleged to have been used to access Defendant's website

18   were located at 3737 Peacock Ave. Miami Florida 33146. **DF 56** Plaintiff has nev-

19   er supplemented his discovery responses nor produced documents evidencing the

20   location of computing devices used to access Defendant's website. **DF 57** Plaintiff

21   claims to have no documents and has never produced any documents evidencing

22   his alleged visit to Defendant's website. **DF 58**

23

24

25

26

27

28

---

[1] Not even an address.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**4.    PLAINTIFF CLAIMED TO WANT TO RENT A CAR FOR HIS GIRLFRIEND TO DRIVE DURING HIS FREQUENT TRAVELS BETWEEN FLORIDA AND CALIFORNIA BUT PRODUCED NO EVIDENCE OF TRAVEL, RENTALS, OR A GIRLFRIEND**

Plaintiff claimed that he wanted to rent a car for use by his girlfriend on those occasions when he traveled to El Monte. However remarkable his latest story, it does not at all fit with his prior discovery responses. Moreover, there is so much missing from his latest story as to leave one wondering how much of it has any basis in fact.

Plaintiff claimed not to recall any other website visited on the same date that he allegedly visited Defendant's website, alleged to have occurred on July 1, 2020. **DF 59** Plaintiff claimed not to recall any websites from which he attempted to rent a vehicle between July 1, 2019 and January 8, 2021. **DF 60**

Had Plaintiff wanted to refresh his memory, he could have searched the list of complaints he filed and the car rental companies he sued at the same time he was suing Defendant!

In the complaint filed in the action, *Gomez v. 777 Exotic Car Rentals, Inc.*, 2:20-cv-06826-AB-PD, Plaintiff alleged he "visited the Car Rental's website in July 2020 with the intent to check out the vehicle rental prices, Car Rental information, special offers and promotions." **DF 61** In the complaint filed in the action, *Gomez v. California Rent-A-Car, Inc.*, 2:20-cv-06867-MRW, Plaintiff alleged he "visited the Car Rental's website in July 2020 with the intent to check out the vehicle rental prices, Car Rental information, special offers and promotions and rent a car." **DF 62** In the complaint filed in the action, *Gomez v. Yesaway Operations, Inc.*, 2:20-cv-07337-GW-JEM, Plaintiff alleged he "visited the Website in July 2020 with the intent to rent a vehicle to check out the vehicle rental prices, special offers and promotions." **DF 63** In the complaint filed in the action, *Gomez v. Payless Car Rental, Inc.*, 2:20-cv-06897-RSWL-AS, Plaintiff alleged he "visited the

4

Car Rental's website in July 2020 with the intent to check out the vehicle rental prices, Car Rental information, special offers and promotions." **DF 64** In the complaint filed in the action, *Gomez v. Midway Rent A Car, Inc.*, 2:20-cv-06971-RGK-AGR, Plaintiff alleged he "visited the Car Rental's website in July 2020 with the intent to check out the vehicle rental prices, Car Rental information, special offers and promotions and rent a car." **DF 65**

Six car rental companies (including Defendant), all in one month, the same description of his motivation, but he could not recall one of them when asked under penalty of perjury where he tried to rent a car.

But even then, Plaintiff never rented a car from any of those business, including Defendant's. Plaintiff claimed to have rented cars from Enterprise and Alamo in 2019 and 2020 but could not recall any specifics. **DF 66** Plaintiff has never claimed to have visited any physical location of Defendant's business. **DF 67** Plaintiff has never claimed to have rented any vehicles from 777 Exotic Car Rentals, California Rent-A-Car, Inc., Yesaway Operations, Payless Car Rental, or Midway Rent A Car, Inc. **DF 68** Moreover, Plaintiff claimed to have no documents and has never produced any documents evidencing the rental of any vehicle within the last five years. **DF 69**

5.  **PLAINTIFF CLAIMED OF WANTING TO RENT A VEHICLE FROM DEFENDANT MAKES NO SENSE GIVEN THE DISTANCES**

Plaintiff alleges he sometimes lives in the City of El Monte. **DF 70**

Plaintiff's own evidence shows only two locations for Defendant's rental facilities, one at 1415 N. La Brea Ave., Hollywood (Los Angeles); the other at 14339 Victory Blvd., San Fernando Valley (Van Nuys). **DF 71** Defendant's location on La Brea is more than 20 miles away from El Monte and more than 12 miles away from Los Angeles International Airport. **DF 72** Defendant's location on Victory Boulevard is nearly 35 miles away from El Monte and more than 20 miles away from Los Angeles International Airport. **DF 73**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# III.

# LEGAL STANDARD

1.   STANDARD FOR SUMMARY JUDGMENT

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.PROC. 56(a). On a motion for summary judgment, the district court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial responsibility to point to the absence of evidence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party has the burden of proof at trial, the moving party can carry its initial burden by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim . . . [or by] demonstrat[ing] . . . that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 477 U.S. at 323. Where the moving party has the burden of proof at trial, "the movant must make a stronger claim to summary judgment by introducing supporting evidence that would conclusively establish movant's right to a judgment after trial should non-movant fail to rebut the evidence." 11 MOORE'S FEDERAL PRACTICE § 56.13[1] (2006 ed.).

Only after the moving party meets its initial burden does the burden shift to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324). This means that the evidence is such that "a jury could reasonably render a verdict in [the nonmoving party's] favor." *Id.* at 387 (citing *Anderson*, 477 U.S. at 252). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

6

1    U.S. at 255.

2    **2.    STANDARDS FOR ACCESSIBILITY CLAIMS**

3            In the Ninth Circuit, a plaintiff bringing an ADA claim must allege what

4    barriers were encountered and "how his disability was affected . . . so as to deny

5    him the 'full and equal' access that would satisfy the injury-in-fact requirement

6    (i.e., that he personally suffered discrimination under the ADA on account of his

7    disability)." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir.

8    2011). A mere list of alleged violations "cannot substitute for the factual allega-

9    tions required in the complaint to satisfy Article III's requirement of an injury-in-

10   fact" when there is no "attempt to relate the alleged violations to [the] disability" at

11   issue. *Id.* at 955.

12   **3.    THE REQUIREMENT OF STANDING IN "WEBSITE" CASES**

13           The most persuasive statement on a plaintiff's standing in a case alleging

14   discrimination arising from the contents of a website is *White v. Square, Inc.*, 7

15   Cal.5th 1019 (2019). In an opinion by the California Supreme Court in response to

16   a question certified by the Ninth Circuit Court of Appeals, the Court explained the

17   basis for liability and, of significance here, set out the requirements of standing to

18   bring a website-based discrimination claim. The relevant portions of the opinion

19   are set forth below:

20       **A.    The Plaintiff Must Suffer Discriminatory Conduct**

21           In light of its broad preventive and remedial purposes, courts have
             recognized that "[s]tanding under the Unruh Civil Rights Act is

22           broad." *Osborne v. Yasmeh*, 1 Cal.App.5th 1118, 1127 (2016) (Os-
             borne).) At the same time, we have acknowledged that "'a plaintiff

23           cannot sue for discrimination in the abstract, but must actually suffer
             the discriminatory conduct.'" ([(*Angelucci v. Century Supper Club*, 41

24           Cal.4th 160, 175 (2007)].)"

25   *White*, 7 Cal.5th at 1025.

26       **B.    The Plaintiff Must Demonstrate a *Bona Fide* Intent to Patronize**

27           **Defendant's Business**

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

7
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Thus, although we agree with Square that mere awareness of a business's discriminatory policy or practices is not enough for standing, White has alleged more than mere awareness here.

In addition, White alleges that he visited Square's website and reviewed its terms of service _with the specific intention to sign up for Square's services and to use them_ in his bankruptcy law practice.

White, 7 Cal.5th at 1027-28 (emphasis added).

Under the rule proposed here, an individual bringing an Unruh Civil Rights Act claim against an online business must allege, for purposes of standing, that he or she visited the business's website, encountered discriminatory terms, _and intended to make use of the business's services_. These requirements are sufficient to limit standing under the Unruh Civil Rights Act to persons with a concrete and actual interest that is not merely hypothetical or conjectural

White, 7 Cal.5th at 1032 (emphasis added).

In concluding that White has sufficiently alleged injury for Unruh Civil Rights Act standing, our opinion does not preclude Square from disputing White's factual allegations. Square may argue in a motion for summary judgment or at trial that White _did not actually possess a bona fide intent to_ sign up for or _use its services_. Our standing analysis is limited to the pleadings, in which White unequivocally alleges his intention to use Square's services.

White, 7 Cal.5th at 1032 (emphasis added).

## IV.

## DISCUSSION

1. **THERE ARE SERIOUS, SUBSTANTIAL, MATERIAL, AND GENUINE DISPUTES AS TO ESSENTIAL ELEMENTS OF PLAINTIFF'S CLAIMS FOUNDATIONAL NOT ONLY TO HIS MOTION BUT TO HIS STANDING TO SUE**

    A. **There is a Genuine Material Dispute as to Whether Plaintiff is Disabled in Light of Plaintiff's Failure to Offer _Any_ Evidence of His Disability Beyond His Self-Serving Declaration.**

Plaintiff's allegations of disability seem clear enough. He is "legally blind and cannot use a computer without assistance of screen-reader software ('SRS')." Complaint, Doc. 1 at ¶1.

Except, in his own complaint, Plaintiff equivocates on the meaning of "blind."

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

> Plaintiff uses the terms "visually-impaired" or "blind" interchangeably to refer to individuals, including himself, who meet the legal definition of blindness. (visual acuity of 20/200 or worse.) Some individuals who meet these criteria have no vision, others have limited vision.

*Id.* at FN. 1.

Except… that's not really the definition. In the United States, the term "legally blind," means a visual acuity of 20/200 or worse with the best possible correction, or a visual field of 20 degrees or less.[2]

Even Plaintiff's declaration equivocates; while entirely silent as to the question of correction, his "evidence" is that he *considers* himself blind and *understands* that he meets the definition for the terms, "visually-impaired" or "blind."

Adding to the fatally deficient description of whether he is blind, legally blind, or (just) visually-impaired,[3] Plaintiff undermines his claim of functional limitations, admitting he can actually read the material on websites.

In his complaint, he alleged he "*cannot use* a computer *without assistance* of [SRS]." Complaint, ¶1 (emphasis added) In his declaration, he stated, "The SRS helps me navigate…" but then, in the same paragraph claims he "cannot use a computer without SRS."

However, later in his declaration, Plaintiff asserts, "I am able to see some of the text on a webpage if I am able to enlarge the font to a big enough size." Decl., ¶14. Moreover, when visiting the website, he "immediately noticed the colors on the webpage provided very low contrast." Decl., ¶15. Put another way, he can read the webpages and discern colors, even those with small differences in color or contrast.

Given Plaintiff's statements are entirely unhelpful to demonstrate his degree

---

[2] See, https://www.afb.org/blindness-and-low-vision/eye-conditions/low-vision-and-legal-blindness-terms-and-descriptions.

[3] Much like low vision, there are many different definitions of visual impairment. "Visual impairment" is a general term that describes a wide range of visual function, from low vision through total blindness. *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

of disability (that should be fatal to his motion if not his entire case), perhaps the Court could turn to medical evidence – treatment or diagnosis – to establish Plaintiff's disability. But that won't be coming … because Plaintiff claimed a right of privacy! Knowing the truth of Plaintiff's disability will not happen because Plaintiff has chosen to keep it secret. When asked to produce evidence of his disability, the response was:

> Plaintiff also objects on the grounds that this request is an invasion of his privacy protected by the California State Constitution and related privacy laws.

But he did obliquely refer to something – a *Florida* disabled person parking placard – that he never produced but otherwise has claimed that he has no evidence to document his disability.

> Notwithstanding the objections and subject to them, apart from Disabled Person Parking Placard issued to him by the State of Florida, Plaintiff does not have any other document in response to this request in his control, custody, or possession.

Nor does Plaintiff have any treating or diagnosing physician related to his disability, just a primary care physician known only to him by last name with no other information.

> Plaintiff identifies his primary care physician Dr. Loredo, Plaintiff cannot recall the name of any other health care provider.[4]

Plaintiff's self-serving declaration cannot resolve the contradictions in his pleadings and the declaration itself and falls far short of competent evidence of any disability.

"A lay witness is competent to testify concerning those physical injuries and conditions *which are susceptible to observation by an ordinary person*." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 996-997 (10th Cir. 2019) (quotation omitted, emphasis added).  But, "where injuries complained of are of such character as

---

[4] It is inexplicable that a plaintiff who has filed so many lawsuits based on a claim of a particular disability has never been diagnosed nor treated for the very condition upon which he bases standing to sue.

1   to require skilled and professional persons to determine the cause and extent there-

2   of, they *must* be proved by the testimony of medical experts." *Tesone*, 942 F.3d at

3   996-997 (emphasis added).  The need for expert testimony must be assessed on a

4   case-by-case basis.  *Id.*  While a lay jury may be able to understand a knee injury

5   or back injury without expert guidance, the same is not true for more complex di-

6   agnoses.  *Id.*; *also EEOC v. AutoZone, Inc.*, 630 F.3d 635, 644 (7th Cir. 2010)

7   ("When an individual suffers from a basic and obvious injury when hit by a vehi-

8   cle, for example, he or she does not need to produce expert testimony to show that

9   the collision was the cause of the injury.  [Citation.]  This reasoning extends to the

10  scope of a physical limitation like Shepherd's which is obvious to an observer and

11  easily described by the suffered.").

12          According to the Third Circuit Court of Appeal's decision in *Marinelli v.*

13  *City of Erie*, 216 F.3d 354, 360-361, 365 (3d Cir. 2000):

14          Congress did not intend for the ADA to protect all individuals who
15          suffer from medical difficulties; rather, Congress desired to shield
            [ . . . ] those individuals whose medical troubles prevented them from en-
16          gaging in *significant daily activities*. Because the record does not reveal
            that Marinelli submitted evidence that would allow a reasonable juror to
17          conclude that he was a member of the latter class of individuals, we hold
            that the District Court erred in denying the City's motion for judgment as
18          a matter of law.

19
20  *Marinelli*, 216 F.3d at 366 (emphasis added).

21          Plaintiff claims limitations related to his vision. He cannot really describe

22  them but he asserts his conclusion of disability to be more than good enough. It is

23  not. Federal law is clear that a plaintiff may only testify to his own disability where

24  such testimony is within the knowledge and understanding of a lay jury. The proof

25  of a condition that is not manifested by any limitations as described in Plaintiff's

26  complaint and his declaration cannot be avoided by simply asserting that Plaintiff

27  is disabled and conditions of the website are barriers.

28          Where there is insufficient admissible evidence to establish that Plaintiff is

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

11

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  disabled, this Court should not only deny Plaintiff's motion but find that he lacks

2  standing to pursue his claims in the first instance.

3  **B.    Even if Plaintiff Were Disabled, He Has Not Described How the**

4  **Conditions of the Property Affected His Ability to Patronize the**

5  **Website**

6  Even were this Court to grant Plaintiff's contention that he is disabled, his

7  claims of barriers to access would still fail, whether defeating his claim of standing

8  altogether or demonstrating a failure on his part to offer evidence sufficient to meet

9  his burden on his motion as to which he has the burden of proof at trial.

10  In the Ninth Circuit, a plaintiff bringing an ADA claim must allege what

11  barriers were encountered and "how [her] disability was affected . . . so as to deny

12  [her] the 'full and equal' access that would satisfy the injury-in-fact requirement

13  (i.e., that [she] personally suffered discrimination under the ADA on account of

14  [her] disability)." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th

15  Cir. 2011). A mere list of alleged violations "cannot substitute for the factual alle-

16  gations required in the complaint to satisfy Article III's requirement of an injury-

17  in-fact" when there is no "attempt to relate the alleged violations to [the] disabil-

18  ity" at issue. *Id.* at 955.

19  In his declaration, Plaintiff asserts, "I am able to see some of the text on a

20  webpage if I am able to enlarge the font to a big enough size." Decl., ¶14. Moreo-

21  ver, when visiting the website, he "immediately noticed the colors on the webpage

22  provided very low contrast." Decl., ¶15. Put another way, he can read the webpag-

23  es and discern colors, even those with small differences in color or contrast.

24  Moreover, built-in zoom controls allow the user to increase or decrease ei-

25  ther the size of a whole web page or just the size of all the text in order to improve

26  readability.

27  Plaintiff's unwillingness to increase the size of the webpage displaced in or-

28  der to excite litigation does not equate to a barrier to access.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

12

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### C. There is No Evidence Plaintiff Has Ever Rented a Vehicle Let Alone One from Defendant and None of a Bona Fide Intent to Patronize

In *White v. Square*, the Ninth Circuit Court of Appeals certified to the California Supreme Court certain questions regarding sufficiency of pleadings to pursue a civil rights claim relating to a website. While addressing issues beyond the scope of this action and Plaintiff's motion, one message came through clearly – a plaintiff must have a *bona fide* intent to patronize the business. In the context of traditional architectural barrier cases, this requirement is expressed in terms of intent to return.

Even at the pleading stage, a plaintiff's profession of intent is to be scrutinized. The Ninth Circuit has found vague allegations of intent to return and patronize a business inadequate to show redressibility under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). See *Feezor v. Sears, Roebuck & Co.*, 608 Fed. App'x. 476, 477 (9th Cir. 2015). See also *Rocca v. Den 109 LP*, 684 Fed. App'x. 667, 669 n.3 (9th Cir. 2017) (affirming district court's finding that plaintiff's intent to return was implausible, in part because of his failure to provide "detailed reasons" for a long distance visit, such as a regular or permanent reason to return).

In this case, when provided the opportunity to articulate his intention to patronize <u>a</u> – <u>any</u> – car rental business, Plaintiff, in support of <u>his</u> motion for summary judgment, in order to meet <u>his</u> initial burden has offered <u>nothing</u>.

As to the encounter with Defendant's website in July of 2020, Plaintiff offered no evidence, beyond his statement, of the encounter having occurred. He preserved no tangible evidence and admitted there was nothing retained by him as proof of the visit.

He claimed not to remember a similar visit to any other car rental business, conveniently "forgetting" that he sued five other car rental businesses, making precisely the same claims of noncompliance, equating them to barriers without de-

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  scribing how they were barriers. He provided discovery responses in which he
2  identified only two car rental companies, never identifying any of the targeted
3  businesses, including Defendant's, as having been used. He offered no evidence of
4  travel – anywhere. He did not attempt to explain how, when, or under what cir-
5  cumstances he would rent a car. He claimed the car rental would be for his girl-
6  friend – identity undisclosed – as he travels to his part-time home – location undis-
7  closed – for reasons entirely undisclosed.

8      But even getting past all of that, this Court should ask one simple question –
9  why Defendant's business?

10     As Plaintiff's own investigator identified in screenshots of Defendant's web-
11 site, there are two brick and mortar locations for Defendant's business, one in the
12 valley, the other in the Hollywood area. Neither of those locations are close to Los
13 Angeles International Airport. If El Monte were the destination for travel, one
14 could not imagine a worse airport in the region at which to arrive (unless cost and
15 frequency of flights were the sole factor). But from there, rather than chose a local
16 car rental place, were this Court even to believe the story still to this point, for
17 Plaintiff's story to make any sense, this Court would have to believe that Plaintiff
18 would fly into an airport, travel considerable distances past scores of car rental lo-
19 cations convenient to the airport, halfway across Los Angeles, only to rent a car
20 from a location nowhere close to where Plaintiff lives.

21     On summary judgment, this Court does not weigh the credibility of the tes-
22 timony. But Plaintiff's story – the one he did not tell but that is indispensable to the
23 requirement of bona fide patronage – is a few patties short of a whopper.

24     So where is Plaintiff left? From his discovery responses, he lived in Florida.
25 He offered no documentation evidencing his having ever left Florida, none of liv-
26 ing in California, none of travel anywhere during the (oh by the way) COVID pan-
27 demic, none of having ever rented a car in his entire life, and none of a home in
28 California or a girlfriend.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  Plaintiff's entire "proof" is a story rife with holes and printouts taken by

2  someone else retained (aka paid) to offer evidence regarding a website there is no

3  proof Plaintiff ever visited.

4  There is insufficient admissible evidence to establish that Plaintiff is entitled

5  to any relief.

6  **2.    PLAINTIFF'S STATE LAW UNRUH ACT CLAIM FAILS BECAUSE PLAINTIFF'S**

7  **ALLEGED WEB SURFING OCCURRED IN FLORIDA**

8  Plaintiff's demand for money under the Unruh Act is terse (two short para-

9  graphs) but wrong. It is wrong in every conceivable way, not least of which is that

10  Plaintiff fails to mention *the* most important prerequisite to a violation of the Un-

11  ruh Act. … the act must have occurred *in* California. And when it comes to website

12  claims, the computer accessing the website must have been located in California at

13  the time of the encounter.

14  In *Strojnik v. Orangewood LLC*, Case No. 19-cv-00946-DSF, 2019 U.S.

15  Dist. LEXIS 213103 (Aug. 8, 2019), this very court discussed the matter, unequiv-

16  ocally stating:

17  > It is well-settled that the Unruh Act applies only within California.
18  > *Loving v. Princess Cruise Lines, Ltd.*, Case No. 08-2898, 2009 U.S.
19  > Dist. LEXIS 130477, 2008 WL 7236419, at *2546 (C.D. Cal. 2009)
20  > (citing cases). In the context of websites, district courts in the Ninth
21  > Circuit have determined that the alleged injury occurs in the place
22  > where the plaintiff visited the website. See, e.g., *Brooke v. Hotel Inv.
23  > Grp., Inc.*, No. 2:17-CV-2527-HRH, 2017 U.S. Dist. LEXIS 150717,
24  > 2017 WL 4124042, at *3 (D. Ariz. Sept. 18, 2017) ("Plaintiff was in
25  > Arizona when she attempted to book a room reservation on defend-
26  > ant's website. The alleged injury, plaintiff's inability to book an ADA-
27  > accessible room on defendant's website, took place in Arizona, not in
28  > California.").

As stated in *Loving v. Princess Cruise Lines*, *"*Plaintiffs' state law claims al-

so do not have extraterritorial reach. It is well-settled that the Unruh Act applies

only within California. See, e.g., *Archibald v. Cinerama Hawaiian Hotels, Inc.*, 73

Cal.App.3d 152, 159 (1977) ("[The Unruh Act] by its express language applies on-

ly within California."); *Chaplin v. Greyhound Lines, Inc.*, 1995 U.S. Dist. LEXIS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

15
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1 | 9478, 1995 WL 419741, at *5 (N.D. Cal. July 3, 1995)."

2 |      Regarding the analysis, this Court correctly observed the rule well estab-

3 | lished that the injury occurs where the plaintiff visited the website, meaning where

4 | the computer is located. *Strojnik v. Orangewood LLC*, 2019 U.S. Dist. LEXIS

5 | 213103, *11; *Brooke v. RIHH LP*, 2020 U.S. Dist. LEXIS 27266 at * FN2 (N.D.

6 | Cal. Feb. 18, 2020).

7 |      This Court was right and Plaintiff's claim must fail. Plaintiff stated in dis-

8 | covery responses that his computer was at his <u>*home in Miami, Florida*</u> when he al-

9 | legedly visited Defendant's website. The evidence consisting of Plaintiff's discov-

10 | ery responses establish that Plaintiff was and is a resident of Florida and was in

11 | Florida when the website encounter allegedly occurred. That ends the inquiry. No

12 | matter what the disposition of any other claim, Plaintiff's Unruh Act claim must

13 | fail and the motion as to the state law claim be DENIED.

14 | **V.**

15 | **CONCLUSION**

16 |      For the foregoing reasons, Defendant respectfully submits Plaintiff's motion

17 | for summary judgment should be DENIED.

18 |

19 | DATED: August 18, 2021       LEWIS BRISBOIS BISGAARD & SMITH LLP

20 |

21 |         By:    */s/ Stephen E. Abraham*

22 |             Stephen E. Abraham

23 |             Melissa T. Daugherty

                Attorneys for Defendant Tribecca, Inc.

24 |

25 |

26 |

27 |

28 |

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT