# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES GOMEZ,<br>    Plaintiff,<br><br>            v.<br><br>TRIBECCA, INC., a California Corporation; and DOES 1–10,<br>    Defendants. | CV 20-06894 DSF (AFMx)<br><br>Findings of Fact and Conclusions of Law After Court Trial |

This matter was tried to the Court on December 14, 2021. Having heard and reviewed the evidence, observed the credibility of the witnesses, and considered the parties' post-trial submissions, the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### A. Plaintiff's Disability

Plaintiff Andrew Gomez asserts that he is legally blind. Dkt. 51, Trial Transcript (Trial Tr.) at 59:8-12. He has substantial visual impairment caused by various conditions that manifest as eye floaters, flashes, blind spots, blurred vision, and colors in his vision that he experiences simultaneously and that severely impair his ability to see. Id. at 59:8-60:21. Gomez also wears corrective glasses that partially assist Gomez with conditions of astigmatism and to see better at a distance, but which do not correct many of his conditions and which do not help in using a computer. Id. at 61:1-8. Gomez's visual impairment prevents him from qualifying for a driver's license. Id. at 61:11-13.

Gomez has a disabled parking placard issued to him by the state of Florida.  Id. at 67:10-14.[1]

### B.   Plaintiff's Trip to California

In July 2020, Gomez was planning a trip to California to visit family, many of whom reside in California.  Id. at 70:10-14.  Gomez has gone back and forth between his home in Miami, Florida, and California numerous times since 2014.  Id. at 58:8-10.  He has stayed with his aunt, who lives in El Monte, "on and off" since 2014.  Id. at 58:5-10.  Gomez's plan was not specific: he planned to arrive in California either by train, bus, airplane, or car.[2]  Id. 68:22-69:1. Gomez was going to travel with his girlfriend, who would be the driver when they arrived in Los Angeles.  Id. 65:25-66:8.  As part of his planning for this trip, Gomez searched for "car rentals in the Los Angeles area" and found Defendant's 699 Rental Car website.  Id. at 68:8-21.

Ultimately, Gomez did not complete this trip to California in 2020 due to several factors:  the COVID-19 pandemic, related issues, and his own health issues.[3]  Id. at 84:1-85:20.  He did not travel to California until March 2021, at which point he spent about two months in California.  Id. at 89:19-23.

---

[1] It appears that Gomez and his counsel failed to respond in good faith to some of Defendant's discovery requests.  However, Defendant did not pursue the issue with the Court, nor did it make other reasonable efforts to discredit Gomez's claim.  In the absence of evidence to the contrary, the Court finds Gomez has established by a preponderance of the evidence that he is visually impaired within the meaning of the Americans with Disabilities Act.

[2] Presumably, if he traveled from Florida by car (as he eventually did), he would not be likely to rent a car in California.

[3] Gomez also cited his inability to access the website at issue here.  The Court did not find that testimony credible.

### C. Plaintiff's Attempt to Use Defendant's Website

In July 2020, Gomez attempted to access Defendant's website using his HP laptop and then using his Samsung Galaxy cell phone, from his home in Miami, Florida. Id. at 63:14-64:12, 82:2-6.

Gomez uses a screen reader software (SRS) when using a computer. Id. at 51:6-9. The SRS works by interpreting the code and reading text out loud to the user. Id. at 22:15-25. Gomez attempted to access the website, but his SRS was unable to read it on either the laptop or the phone. Id. at 63:10-65:2. The website also lacked an enlargement tool feature that Gomez sometimes uses in conjunction with the SRS to help him access a website. Id. at 72:2-14.

Around the time that Gomez attempted to access Defendant's website, he also visited the websites of five other rental car companies based in California. He then filed lawsuits against these companies for inaccessibility of their websites. Id. at 98:2-101:6. Gomez has filed several other lawsuits against rental car companies. His lawsuits against Alamo and Enterprise resulted in those companies having accessible websites that Gomez is now able to use. Id. at 66:24-67:9.

### D. Expert Testimony of Inaccessibility of Website

Michael Silverman, an accessibility compliance expert, investigated Defendant's rental website in August 2021. Id. at 16:15-17:3; 18:20-25. He discovered 241 violations according to section 508 of the ADA: 158 violations when accessed via computer and 46 when accessed via a Samsung android-type phone. Id. at 23:4-22. Violations included that the website was not readable by screen-reader software; the lack of alternative text explanation for visual elements that provided information, i.e., images of Visa, Mastercard, and Discover to describe payment options; and color contrast issues that would make it difficult for a visually-impaired client to read the text without a screen-reader. Id. at 19:7-21:18.

The expert concluded that the website is not accessible to users using screen-reading software on laptops or mobile environments. Id.

3

at 29:15-17. The expert further opined that the coding could be changed to allow the visual aspect of the website to be compatible with a screen-reader-software, and doing so would not be expensive. Id. at 28:6-29:8.

## II. CONCLUSIONS OF LAW

A.  **Plaintiff's Standing under the Americans with Disabilities Act (ADA)**

A plaintiff must have Article III standing to obtain relief under the ADA. See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc). To establish Article III standing, a plaintiff must have suffered an injury in fact that is both concrete and particularized as well as actual or imminent; there must be a causal connection between the injury and conduct complained of; and it must be likely, not speculative, that the injury can be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137 (9th Cir. 2002). Moreover, a plaintiff seeking injunctive relief under the ADA must show a real and immediate threat of repeated injury in the future. Chapman, 631 F.3d at 946; see also TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."). Courts assess standing at the time of filing, and the plaintiff bears the burden of establishing standing. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180 (2000); Chapman, 631 F.3d at 946.

"Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief." Chapman, 631 F.3d at 949; D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008). Where the plaintiff is "indifferent to returning" or if their "alleged intent to return is not genuine," no imminent threat exists. Chapman, 631 F.3d at 953.

In lieu of demonstrating an intent to return, a plaintiff may employ the deterrent-effects doctrine, which requires him to show that he was facing existing non-compliance with the ADA and was deterred, as a result, from revisiting the establishment. Id. at 949-50; accord Pickern, 293 F.3d at 1137-38.

Under the deterrent effects doctrine, a plaintiff experiences sufficient injury-in-fact if he shows that an architectural barrier deters him from revisiting a noncompliant facility. Chapman, 631 F.3d at 950; Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1041 n.4 (9th Cir. 2008) ("[O]nce a plaintiff has . . . become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.")  "Where an individual knows of ADA violations at a public accommodation, he is not required to keep returning in order to show imminent injury." Rutherford v. JC Resorts, LLC, No. 19-CV-00665-BEN (NLSx), 2020 WL 4227558, at *4 (S.D. Cal. July 23, 2020), appeal dismissed, No. 20-55878, 2020 WL 8618016 (9th Cir. Nov. 25, 2020) (citing Gastelum v. Canyon Hospitality LLC, No. 17-CV-2792-PHX (GMSx), 2018 WL 2388047, at *6 (D. Ariz. May 25, 2018)).  But, to be deterred from making use of the defendant's facility, a plaintiff must have a true desire to return to the facility but for the barriers. See, e.g., D'Lil, 538 F.3d 1037-38.

Gomez established that he spends a significant amount of time in California, and indeed spent two months with his aunt in the Los Angeles area in 2021. The need for a car (for someone else to drive) during a long-term visit is clear. Gomez should not be limited to arriving in his girlfriend's car or inquiring for rental cars at the few companies that have compliant websites; he should have the option to compare prices and car options across those websites and take advantage of promotions.

But to determine whether a plaintiff is currently deterred, courts look to a plaintiff's stated intentions and other practical considerations, like the distance and frequency of travel near the public accommodation. Vogel v. Sym Properties, LLC, No. 15-cv-09855-AB

(ASX), 2017 WL 4586348, at *2 (C.D. Cal. Aug. 4, 2017). Here, Plaintiff stated not only his intent to return to the website, but his intent to patronize the business itself by renting a car were he able to do so via the website.[4] Tr. 80:16-23. However, the Court does not find this testimony to be credible.[5] Among other things, practical considerations weigh against Plaintiff's visiting the business. Defendant's two locations are located at 1415 N. La Brea Avenue, Los Angeles (Brea Location) and 14339 Victory Blvd., Van Nuys. These are approximately 20 or 30 miles away from El Monte (where Plaintiff's family lives). Plaintiff conceded that there were likely closer car rental options. Tr. 111:23-112:12; 114:8. The Brea Location is about 12 miles from Los Angeles International Airport. In other words, whether Plaintiff was coming from the airport or El Monte, Defendant's car rental locations would not be easy or even convenient choices. In addition, although Plaintiff testified that he had made numerous trips to California since 2014, and considered traveling to California in 2020 by plane, bus, train, or car, the only trip he testified to was made by car driven by his girlfriend from Florida. In order to have succeeded in his litigation against Alamo and Enterprise, he presumably testified in those cases that he intended to avail himself of the services at those car rental agencies as well. But he did not testify to any instance when he has rented a car – in California or elsewhere.

---

[4] The trial transcript reads:

> Q: Do you have any expectations of returning to this website under any circumstances? And by returning to the website, I mean clicking on and opening up the website and attempting to use it as a car rental agency. Do you have any expectation of doing that?

> A: Yes. I have expectations of going back to the website when it's fully accessible to me so I can make a car reservation, yeah.

Tr. 80:16-23.

[5] In assessing credibility, the Court has considered Ninth Circuit Jury Instruction 1.14.

6

Two issues somewhat complicate the evaluation of Plaintiff's genuine intent to return. First, the "public accommodation" is a website through which Plaintiff wanted to inquire about services, which is logistically easier to return to than a physical location. See Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905 (9th Cir. 2019) (public accommodation includes websites of places of public accommodation). Returning to a website does not involve the same logistical issues that factor into the genuineness of a plaintiff's intent to return to a physical establishment. But Plaintiff himself asserts he "wasn't deterred from visiting a URL. He was deterred from the benefits of a physical place." Dkt. 56 at 7. Indeed, there is no apparent reason to visit a website – certainly not for a second time – unless you intend to purchase or use the products or services described on the website. This is especially true of a car rental website. Second, Plaintiff contends he did not know the exact location of Defendant's rental facilities because of the website's inaccessibility. Tr. 70:15-21. Plaintiff testified that he found Defendant's website because it "popped up" when he "put car rentals in the Los Angeles area" into a search engine on the internet. Tr. 68:11-21. Defendant did not challenge this testimony. But common sense dictates that considering the size of Los Angeles County, such a broad search is not likely to be very helpful in locating a car rental business in the desired locale – or located near any particular airport, or train or bus station close to one's ultimate destination.

Several circuits have found a website's inaccessibility did not confer standing where the services were impossible for plaintiff to use or otherwise irrelevant to plaintiff. See Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649, 653-57 (4th Cir. 2019) (finding that a plaintiff's asserted "informational" and "dignitary" harms were insufficiently "concrete and particularized" to constitute an injury-in-fact where the information he allegedly could not access on a credit union's website had no relevance to him); Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 833-36 (7th Cir. 2019) (reaching similar conclusion); Brintley v. Aeroquip Credit Union, 936 F.3d 489, 491-95 (6th Cir. 2019) (reaching similar conclusion, and specifically rejecting

7

the argument that the ADA's lack of a "client or customer" requirement means that an ADA plaintiff may have Article III standing to challenge the inaccessibility of a website that has no actual relevance to the particular plaintiff).

The Court concludes Plaintiff does not have Article III standing. Plaintiff has not credibly demonstrated that he intends to return to Defendant's website for any reason. See, e.g., Thurston v. FCA US LLC, No. EDCV-172183-JFW (SPx), 2018 WL 700939, at *3 (C.D. Cal. Jan. 26, 2018) (plaintiff did not allege that website would have helped her achieve any specific goal); Guglielmo v. Nebraska Furniture Mart, Inc., No. 19-CV-11197 (KPF), 2020 WL 7480619, at *5 (S.D.N.Y. Dec. 18, 2020) (court doubted plaintiff would return to a website that could not deliver goods to New York, where plaintiff lived). Although the website's inaccessibility allegedly initially prevented Plaintiff from learning the locations of Defendant's rental cars, Plaintiff knew by the time he filed his Complaint that the locations were nowhere near El Monte and he did not demonstrate that they were close to any train or bus stations, or the airport that Plaintiff would have used to get to a California rental car agency in the first place. In short, Plaintiff did not demonstrate that this service was relevant to him, so the harm he suffered by being unable to access the website was merely "informational" and "dignitary." See Griffin, 912 F.3d 649, 653-57 (finding these harms insufficient to confer standing under the ADA).

For these reasons, the Court finds Plaintiff lacks standing to sue for injunctive relief under the ADA.

### B.   Unruh Act Claim

The Unruh Act "broadly outlaws arbitrary discrimination in public accommodations and includes disability as one among many prohibited bases." Jankey v. Lee, 55 Cal. 4th 1038, 1044 (2012). "As part of the 1992 reformation of state disability law, the Legislature amended the Unruh Civil Rights Act to incorporate by reference the ADA, making violations of the ADA per se violations of the Unruh Civil Rights Act." Id. (citing Cal. Civ. Code § 51(f)). As explained above,

however, Plaintiff does not have standing to establish a violation of the ADA, and section 51(f) is therefore inapplicable. Plaintiff may still prevail on his Unruh Act claim if he has established its elements.

Defendant contends that the Unruh Act does not apply here because Plaintiff was in Florida when he encountered Defendant's website. The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Courts have consistently found that the Unruh Act is expressly limited to discrimination that takes place within California's borders. See Warner v. Tinder Inc., 105 F. Supp. 3d 1083, 1099 (C.D. Cal. 2015); Archibald v. Cinerama Hawaiian Hotels, Inc., 73 Cal. App. 3d 152, 159 (1977) (the Unruh Act "by its express language applies only within California"). A few district courts have dismissed Unruh Act claims based on websites that were accessed from outside California. See Ebeid v. Facebook, Inc., No. 18-cv-07030-PJH, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing Unruh Act claim brought by resident of Arizona concerning alleged discrimination by website operator located in California); Strojnik v. Resort at Indian Springs, LLC, No. 19-CV-04616-SVK, 2019 WL 6913039, at *6–7 (N.D. Cal. Dec. 19, 2019) (dismissing case by Arizona resident accessing defendant's website from Arizona despite allegation that he often visits California); Warner, 105 F. Supp. 3d at 1099 (dismissing Unruh Act claim against California-based operator of dating app brought by resident of Florida; citing cases). The Court is not aware of any case that has allowed application of the Unruh Act to a person accessing a website from outside of California.

Although the statute applies broadly to "all business establishments of every kind whatsoever," it also specifies its application to "persons within the jurisdiction of the state." Cal. Civ.

9

Code § 51(b).[6] Gomez was not physically "within the jurisdiction" of California when he attempted to access the website and he likely would not be subject to California's jurisdiction if another party were to bring a suit against him. There are no California Supreme Court or appellate cases interpreting the statute or extending application of the Unruh Act in this way. Given this, the Court is persuaded by the weight of authority that the statute does not apply to persons who were not physically in California when they experienced discrimination by a California-based business.

### III. CONCLUSION

For the reasons stated above, Gomez's ADA and Unruh Act claims are dismissed.

IT IS SO ORDERED.

Date: May 10, 2022

Dale S. Fischer
United States District Judge

---

[6] The relevant section reads:

> (b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).